UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

DAYNA MEJIAS and DANIELA VASQUEZ
Individually and On Behalf of All Others Similarly
Situated,

         Plaintiffs,

   -against-

ALEXIS DINER, INC. and YIANNAKIS ZACHARIA,

         Defendants.
_____

Civil Case No.

# CLASS ACTION COMPLAINT

Plaintiffs allege of their own personal knowledge and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs, individually and in their representative capacities, bring this class action for violations of the Fair Labor Standards Act ("FLSA") and New York's Wage and Hour Laws ("NYLL").

2. More specifically, Plaintiffs assert that they and members of the Class, as non-exempt employees, are entitled to recover all unpaid wages for off-the- clock work; spread of hours compensation; overtime compensation for hours in excess of 40 in the workweek; misappropriated tips; and for liquidated damages, costs and reasonable attorney's fees required by federal and state law and regulations.

1

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction under 28 U.S.C. §1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

4. Venue is proper in this District under 28 U.S.C. §1391 (b) and (c) because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendants are subject to personal jurisdiction in this District.

**THE PARTIES**

5. Plaintiff, DAYNA MEJIAS, is an adult individual residing in Newburgh, New York 12550.

6. Plaintiff, DAYNA MEJIAS was employed by Defendants as a waitress/server at Alexis Diner from approximately September 2015 to March 2020.

7. Plaintiff, DANIELA VASQUEZ, is an adult individual residing in Marlboro, New York 12542.

8. Plaintiff, DANIELA VASQUEZ was employed by Defendants as a waitress/server at Alexis Diner from approximately 2004 to 2017.

9. Defendant, ALEXIS DINER, INC., ("DINER") is a is a domestic corporation created and existing under and by virtue of the laws of the State of New York.

10. DINER maintains its principal place of business and headquarters at 5023 Rte. 9W, Newburgh, New York 12550.

11. Upon information and belief Defendant, YIANNAKIS ZACHARIA, is an adult individual residing in Kingston, New York 12481.

## STATEMENT OF MATERIAL FACTS

### A. Defendants Are Joint Employers

12. Defendant, YIANNAKIS ZACHARIA, possesses operational control, ownership interests and controls significant functions of DINER.

13. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

14. Each Defendant possessed substantial control over Plaintiffs' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

15. Defendants jointly employed Plaintiffs and are employers within the meaning of 29 U.S.C. 201 et. seq. and the NYLL.

16. In the alternative, Defendants constitute a single employer of Plaintiff.

17. Upon information and belief, Defendant ZACHARIA operates Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

    a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

    b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c) transferring assets and debts freely as between Defendants,

    d) operating Defendant Corporation for his own benefit as the sole or majority

shareholder,

e)	operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

f)	intermingling assets and debts of his own with Defendant Corporation,

g)	diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h)	Other actions evincing a failure to adhere to the corporate form.

i).	Defendants had the power to hire and fire Plaintiffs.

j).	Defendants controlled the terms and conditions of Plaintiffs' employment.

k)	Defendants determined the rate and method of any compensation in exchange for Plaintiffs' services.

l).	Defendants possessed the authority and power to maintain and/or had unrestricted access to records regarding the employment of Plaintiffs.

**B.	Defendants' Wage & Hour Practices**

18.	At all times material and relevant herein, Defendants were the employer of Plaintiffs within the meaning of 29 U.S.C. §§201 et. seq.

19.	At all relevant times, Defendants were the employer of Plaintiffs within the meaning of NYLL§§650 et. seq. and the supporting New York State Department of Labor regulations.

20.	Defendants, doing business as ALEXIS DINER, are engaged in interstate commerce, with an annual gross volume of business exceeding $500,000.00.

21. In each year from 2014 to 2020, Defendants have, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

22. Upon information and belief, Defendants and/or their enterprise have been directly engaged in interstate commerce. As an example, numerous items that are used in the DINER on a daily basis are goods produced outside of the State of New York.

23. Defendants maintained a policy and practice of requiring Plaintiffs to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

24. Defendants' wage and hour practices violated Plaintiffs' rights under the FLSA and New York Labor Law by, inter alia, not paying them the wages owed for all hours worked.

25. From 2015 to 2018, Plaintiff MEJIAS regularly worked at least 50 hours per week.

26. From 2018 to 2020, Plaintiff MEJIAS regularly worked at least 45 hours per week.

27. From 2014 to 2017, Plaintiff VASQUEZ regularly worked at least 48 hours per week.

28. Between September 2014 and 2020, during each workweek, Plaintiffs regularly worked at least 2 days for more than ten (10) hours, in a single workday.

29. Defendants fabricated false time records which understated the true number of hours Plaintiff worked each week.

30. Defendants never compensated Plaintiff for all hours worked.

31. Defendants never compensated Plaintiff for all hours in a workweek in excess of forty (40).

32. Defendants never compensated Plaintiffs at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of 40.

33. Plaintiff received more than $30.00 per month in tips.

34. Under the FLSA and NYLL, tips are the property of the employee.

35. As Plaintiffs' employer, Defendants were prohibited from using an employee's tips for any reason.

36. Defendants failed to inform Plaintiffs, who received tips, that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL.

37. Defendants failed to inform Plaintiffs that their tips were being credited towards the payment of the minimum wage.

38. Defendants illegally converted and misappropriated at least fifteen percent (15%) of Plaintiffs' tips, for their own use and benefit.

39. Defendants unlawful misappropriation of Plaintiff's tips violated New York Labor Law § 196-d (2007).

40. Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit or pay them the full hourly minimum wage.

41. Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records for the Plaintiffs and class.

42.     To illustrate the foregoing, during the week of 01/27/20 to 02/02/20, Plaintiff MEJIAS was compensated for 33 hours at a rate of $7.85 per hour and received compensation in the amount of $259.05, together with stated tips of $363.00, for a total of $622.05.

43.     In fact, during that week, Plaintiff worked 51 hours and should have received base compensation in the amount of (40 X 12.50 = $500) plus overtime (11 X $18.75 = $206.25), plus $427.05 in tips (reduced by 15% to $363 by Defendants' misappropriation). Plaintiff's total gross wages, including tips, should have been $1,133.30.

44.     Defendants have paid Plaintiffs wages, partly in cash, without providing a pay stub or taking withholding taxes.

45.     Defendants have failed to post at the workplace, or otherwise provide to employees, the required postings, or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

46.     Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs worked, and to avoid paying Plaintiffs properly for their full hours worked.

47.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

48.     Defendants' wrongful acts, omissions and/or commissions, as alleged herein, were not made in good faith or in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or the New York Department of Labor, or any administrative practice or enforcement policy of such departments.

49. Defendants' widespread violations of the above-described federal and state wage and hour statutes and regulations were willful, arbitrary, unreasonable and/or in bad faith.

## COLLECTIVE ACTION ALLEGATIONS

50. Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

51. This is an appropriate collective or representative action under 29 U.S.C. §216(b), sometimes referred to as an opt-in class action. Plaintiffs seek to recover from DINER unpaid minimum wages, overtime compensation and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), for the following collective group:

> All current and former employees of ALEXIS DINER and/or predecessor companies, who during the applicable limitations period, performed any work as food servers/waitresses/waiters, who were not paid minimum wage; not compensated for all hours worked and not paid overtime compensation at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of 40 and who consent to file a claim to recover damages for overtime compensation that is legally due to them ("FLSA Plaintiffs").

52. DINER treated Plaintiffs and all FLSA Plaintiffs similarly in that they:

(a) performed similar tasks and job functions; below; (b) were subject to the same laws and regulations; (c) were paid in the same or similar manner; (d) were required to work in excess of forty hours in a workweek; and (e) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty (40).

53. At all relevant times herein, DINER, by its agents, servants and/or employees was and has been aware of the requirements to pay Plaintiffs and all FLSA Plaintiffs minimum wage, as required by law.

54. At all relevant times herein, DINER, by its agents, servants and/or employees was and has been aware of the requirements to pay Plaintiffs and all FLSA Plaintiffs or all hours worked, as required by law.

55. At all relevant times herein, DINER, by its agents, servants and/or employees was and has been aware of the requirements to pay Plaintiffs and all FLSA Plaintiffs overtime compensation at an amount equal to the rate of one- and one-half times their respective regular rates of pay for all hours worked each workweek above forty, as required by law.

56. DINER intentionally and willfully refused to pay Plaintiffs and all FLSA Plaintiffs minimum wage.

57. DINER intentionally and willfully refused to pay Plaintiffs and all FLSA Plaintiffs for all hours worked.

58. DINER intentionally and willfully refused to pay Plaintiffs and all FLSA Plaintiffs overtime compensation for all hours worked per workweek above forty.

## CLASS ALLEGATIONS

59. Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

60. Plaintiffs brings this action on behalf of themselves and all others similarly situated.

61. Plaintiffs seek to represent the following Class and subclasses:

[a] All current and former employees of ALEXIS DINER GOALS and/or predecessor companies, who during the applicable limitations period, performed any work as food servers/waitresses/waiters, and who were not paid minimum wage for all hours worked.

[b] All current and former employees of ALEXIS DINER GOALS and/or predecessor companies, who during the applicable limitations period, performed any work as food servers/waitresses/waiters, and who were not paid overtime compensation at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of 40.

[c] All current and former employees of ALEXIS DINER GOALS and/or predecessor companies, who during the applicable limitations period, performed any work as food servers/waitresses/waiters, and who were not paid spread of hours wages or for an additional hour of work, on the days that their spread of time exceeded ten (10) hours.

[d] All current and former employees of ALEXIS DINER GOALS and/or predecessor companies, who during the applicable limitations period, performed any work as food

servers/waitresses/waiters, and who were deprived their tips/gratuities by DINER, which misappropriated such tips for its own use and benefit.

62. Plaintiffs are members of the Classes they seek to represent.

63. Plaintiffs seek damages pursuant to NYLL §650 et. seq., the applicable wage, and hours law under which class members worked. Class certification for these state law claims is appropriate under Rule 23(a) and Rule 23(b) (3) because all the requirements of the Rules are met.

64. The Class is so numerous that joinder of all members is impractical. Upon information and belief, there are at least 40 members in the Class. While the exact number and identities of class members are unknown at this time, such information is in the possession of DINER and can be ascertained through appropriate discovery.

65. There are questions of law and fact common to the Class.

66. The named Plaintiffs' claims are typical of those of the Class members. Plaintiffs' claims encompass the challenged practices and course of conduct of DINER. Plaintiffs' legal claims are based on the same legal theories as the claims of the putative class members. The legal issues as to which federal and state laws are violated by such conduct apply equally to Plaintiffs and to the class.

67. The named Plaintiffs will fairly and adequately protect the interests of the Class. The Plaintiffs' claims are not antagonistic to those of the putative Class and they have hired competent counsel skilled in the prosecution of class actions.

68. Common questions of law and fact predominate over questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

69. To conduct this action as a class action under FRCP Rule 23 presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member, and maximizes recovery to them.

## FIRST CLAIM FOR RELIEF
## (INDIVIDUAL CLAIMS –FLSA VIOLATIONS)

70. Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

71. DINER violated the FLSA by failing to compensate Plaintiffs at minimum wage for all hours worked, each work week.

72. DINER required Plaintiffs to acknowledge false time records which understated the true number of hours worked.

73. DINER violated the FLSA by failing to properly compensate Plaintiffs for all hours in a workweek in excess of forty (40).

74. DINER violated the FLSA by failing to compensate Plaintiffs at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of 40.

75. DINERS' conduct and employment practices, as described herein, were willful, intentional, unreasonable, arbitrary and in bad faith.

76. By reason of these unlawful acts, DINER is liable to Plaintiffs for all unpaid wages, unpaid overtime compensation in amounts to be determined at trial, together with such other amounts for liquidated damages, prejudgment interest, attorney's fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
## (INDIVIDUAL CLAIMS – NYLL VIOLATIONS)

77. Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

78. DINER required Plaintiffs to acknowledge false time records which understated the true number of hours worked.

79. DINER violated the NYLL by failing to compensate Plaintiffs for all hours worked, each week.

80. DINER violated the NYLL by failing to properly compensate Plaintiffs for all hours in a workweek in excess of forty (40).

81. DINER violated the NYLL by failing to compensate Plaintiffs at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of 40.

82. As a result of DINERS' unlawful business practices, as above described, Plaintiffs received wages in an amount less than the wages that they earned.

83. DINERS' conduct and employment practices, as described herein, were willful, intentional, unreasonable, arbitrary and in bad faith.

84. By reason of these unlawful acts, DINER is liable to Plaintiffs for unpaid wages for all work performed; unpaid compensation for all hours in a workweek in excess of forty (40) at a rate of 1.5 times their regular rate of pay, together with such other amounts for liquidated damages, prejudgment interest, attorney's fees, costs and other compensation pursuant to NYLL.

## THIRD CLAIM FOR RELIEF
### (CLASS CLAIMS – NYLL VIOLATIONS)

85. Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

86. DINER required Plaintiffs and members of the Class to acknowledge false time records which understated the true number of hours worked.

87. DINER violated the NYLL by failing to compensate Plaintiffs and members of the Class for all hours worked, each week.

88. DINER violated the NYLL by failing to properly compensate Plaintiffs and members of the Class for all hours in a workweek in excess of forty (40).

89. DINER violated the NYLL by failing to compensate Plaintiffs and members of the Class at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of 40.

90. As a result of DINERS' unlawful business practices, as above described, Plaintiffs and members of the Class received wages in an amount less than the wages that they earned.

91. DINERS' conduct and employment practices, as described herein, were willful, intentional, unreasonable, arbitrary and in bad faith.

92. By reason of these unlawful acts, DINER is liable to Plaintiffs and members of the Class, for unpaid wages for all work performed; unpaid compensation for all hours in a workweek in excess of forty (40) at a rate of 1.5 times their regular rate of pay, together with such other amounts for liquidated damages, prejudgment interest, attorney's fees, costs and other compensation pursuant to NYLL.

**FOURTH CLAIM FOR RELIEF**
**(COLLECTIVE CLAIMS –FLSA VIOLATIONS)**

93. Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

94. DINER violated the FLSA by failing to compensate Plaintiffs and members of the Class for all hours worked, each week.

95. DINER violated the FLSA by failing to properly compensate Collective Members for all hours in a workweek in excess of forty (40).

96. DINER violated the FLSA by failing to compensate Collective Members at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of forty (40).

97. DINERS' conduct and employment practices, as described herein, were willful, intentional, unreasonable, arbitrary and in bad faith.

98. By reason of these unlawful acts, DINER is liable to Collective Members for all unpaid wages, unpaid overtime compensation, in amounts to be determined at trial, together with such other amounts for liquidated damages, prejudgment interest, attorney's fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## FIFTH CLAIM FOR RELIEF
### (Individual-NYLL Spread of Hours)

99. Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

100. At least two (2) times per week, Plaintiffs worked a span of hours that exceeded ten (10) hours in a single day.

101. DINER never compensated Plaintiffs for an additional hour of work, on the days that their spread of time exceeded ten (10) hours.

102. DINER knew that nonpayment of spread of hours premium was a violation of the NYLL.

103. DINER willfully and intentionally failed to compensate Plaintiffs for one hour's pay at the basic New York minimum hourly wage rate when their workdays exceeded ten (10) hours, as required by New York law.

104. DINER is liable to Plaintiffs for an award of damages, liquidated damages, pre-post judgment interest, attorneys' fees, costs, and other compensation pursuant to the NYLL.

## SIXTH CLAIM FOR RELIEF
### [Individual- Unlawful Misappropriation of Tips in Violation of NYLLl]

105. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

106. New York State Labor Law § 196-d prohibits any employer or its agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

107. DINER unlawfully misappropriated at least fifteen percent (15%) of Plaintiff's tips that they received from customers.

108. DINER knowingly and intentionally retained a portion of Plaintiff's tips in violations of the NYLL and supporting Department of Labor Regulations.

109. Plaintiffs have been damaged in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### [Class- Unlawful Misappropriation of Tips in Violation of NYLL]

110. Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

111. DINER unlawfully misappropriated at least fifteen percent (15%) of Class Members' tips that they received from customers.

112. DINER knowingly and intentionally retained a portion of Class Members tips in violations of the NYLL and supporting Department of Labor Regulations.

113. Class Members have been damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Individually and on behalf of all others similarly situated, pray for Judgment as follows:

(a) Certifying this case as a Rule 23 Class Action, with Plaintiffs as Class representative and their attorneys, as Class counsel.

(b) Certifying this case as an FLSA Collective Action, with Plaintiffs as Collective representatives and their attorneys, as Collective counsel.

(c) Judgment for all unpaid minimum wages to which Plaintiffs and Class Members are lawfully entitled pursuant to the NYLL.

(d) Judgment for all unpaid overtime compensation to which Plaintiffs and Class Members are lawfully entitled pursuant to the FLSA.

(e) Judgment for all unpaid overtime compensation to which Plaintiffs and Class Members are lawfully entitled pursuant to the NYLL.

(f) Judgment for all unpaid spread of hours compensation to which Plaintiffs and Class Members are lawfully entitled pursuant to the NYLL.

(g) Judgment for all tips earned by Plaintiffs and Class Members unlawfully misappropriated by DINER in violation of the NYLL and supporting Department of Labor Regulations.

(h) Judgment for liquidated damages pursuant to NYLL in such amounts equal to the unpaid minimum wages, unpaid overtime compensation, unpaid spread of hours compensation and/or misappropriated tips to which Plaintiffs and Class Members are lawfully entitled, but which were intentionally and wrongfully withheld by DINER;

(i) Judgment for liquidated damages pursuant to FLSA in such amounts equal to all unpaid minimum wages and unpaid overtime compensation to which Plaintiffs and Collective Members are lawfully entitled, but which were intentionally and wrongfully withheld by DINER;

(j) An order directing Defendants to pay Plaintiffs and Class Members their reasonable attorney's fees and all costs connected with this action;

(k) Such other and further relief as this Court may deem just and proper.

Dated: August 27, 2020

BLAU LEONARD LAW GROUP, LLC

/s/ Steven Bennett Blau
Steven Bennett Blau
Shelly A. Leonard
23 Green Street, Suite 105
Huntington, New York 11743
(631) 458-1010
sblau@blauleonardlaw.com
sleonard@blauleonardlaw.com

*Attorneys for Plaintiffs*

**DEMAND FOR PRESERVATION**

PLEASE TAKE NOTICE that ALEXIS DINER, INC. and YIANNAKIS ZACHARIA (herein after collectively "Defendants"), are under a legal duty to maintain, preserve, retain, protect, and not destroy any and all evidence, documents and data, both electronic and hard copy, and/or tangible items pertaining or relevant to property discoverable regarding to all of the claims made in this litigation.

This notice applies to Defendants' on- and off-site computer systems and removable electronic media, plus all computer systems, services, and devices (including all remote access and wireless devices) used for your overall operation. This includes, but is not limited to, e-mail and other electronic communications; electronically stored documents, records, images, graphics, recordings, spreadsheets, databases; calendars, system usage logs, contact manager information, telephone logs, internet usage files, deleted files, cache files, user information, and other data. Further, this notice applies to archives, backup and disaster recovery tapes, discs, drives, cartridges, voicemail, and other data. All operating systems, software, applications, hardware, operating manuals, codes keys and other support information needed to fully search, use, and access the electronically stored information.

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, or optically stored as:

- Digital communications (e.g., e-mail, voice mail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);

- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);

- Sound Recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., .AVI and .MOV files);

- Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies);

- Presentations (e.g., PowerPoint, Corel Presentations)

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Computer Aided Design/Drawing Files; and,

- Back Up and Archival Files (e.g., Zip, .GHO)

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;

- Using data or media wiping, disposal, erasure, or encryption utilities or devices.

- Overwriting, erasing, destroying, or discarding back up media.

- Re-assigning, re-imaging, or disposing of systems, servers, devices, or media.

- Running antivirus or other programs effecting wholesale metadata alteration;

- Releasing or purging online storage repositories;

- Using metadata stripper utilities;

- Disabling server or IM logging; and,

- Executing drive or file defragmentation or compression programs.

In order to assure that your obligation to preserve documents and things will be met, please forward a copy of this letter to any and all persons and entities with custodial responsibilities for the items referred to herein.  Notify all individuals and affiliated organizations of the need and duty to take the necessary affirmatives steps to comply with the duty to preserve evidence.

Specifically, you are instructed not to destroy, disable, erase, encrypt, alter, or otherwise make unavailable any electronic data and/or evidence relevant to potential claims and to take reasonable efforts to preserve such data and/or evidence.